IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| GINTIA BEASLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 05-0902-CV-W-RED |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Gintia Beasley ("Beasley") seeks judicial review of the Commissioner's denial of her request for continued Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*. Plaintiff has exhausted all of her administrative remedies, and therefore, pursuant to Section 1631(c)(3) of the Act and 42 U.S.C. § 1383(c)(3), judicial review is now appropriate. After carefully reviewing the record, the Court hereby **AFFIRMS** the decision of the Administrative Law Judge ("ALJ").[1]

### I. Background

The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. Additionally, the ALJ's decision within the administrative record fully sets forth his findings and as such will not be repeated herein in its entirety except to the extent necessary to address Plaintiff's arguments.

### II. Standard of Review

---

[1] Because the Court finds that substantial evidence supports the ALJ's decision and that the ALJ applied the correct standard of law, the Court adopts much of Defendant's brief without quotation or citation.

The Court's review is limited to determining whether the Commissioner applied the correct standard of law and whether the Commissioner's findings of fact are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g), 1383(c)(3) (2000); *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). Substantial evidence is relevant evidence that a reasonable mind would accept as sufficient to support the Commissioner's conclusion. *See Warburton*, 188 F.3d at 1050. In making this determination, the Court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See id.* The Court may not reverse the Commissioner's decision merely because substantial evidence supports a different result. *See Pierce v. Apfel*, 173 F.3d 704, 706 (8th Cir. 1999). This is true even if the Court might have weighed the evidence differently and reached a different result if a de novo review were applied. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).

The Social Security regulations provide an eight-step evaluation process for determinations of continuing disability. 20 C.F.R. § 404.1594(f) (2006). First, the ALJ must determine whether the claimant is engaged in substantial activity. If the claimant has engaged in substantial activity, the disability will be found to have ended. Next, the ALJ must decide if the claimant has an impairment or impairments that meets or equals the severity of a listed impairment. Then, the ALJ must determine whether there has been any medial improvement and whether that medical improvement is related to the claimant's ability to work. If there is no medical improvement or the medical improvement is not related to the claimant's ability to work, a decision is made as to whether there are any applicable exceptions to the medical improvement standard. If there is a medical improvement related to the claimant's ability to work or there is an applicable exception, the ALJ must then determine whether all current

impairments are severe. If the impairments are not considered severe, the claimant will no longer be considered disabled. If the impairments are severe, the ALJ must then assess the claimant's current ability to do substantial gainful activity. The ALJ will consider the claimant's residual functional capacity and determine whether the claimant is able to do any past relevant work. If the claimant can do such work, the disability will be found to have ended. Finally, if the claimant is found to be unable to do past relevant work, the ALJ must consider whether there is any other work that can be performed given the claimant's assessed residual functional capacity. If there is such work, the disability will be found to have ended and benefits will cease.

### III. Analysis

Beasley identifies three points of error in the ALJ's decision to deny continued benefits. First, Beasley argues the ALJ's finding of medical improvement is not supported by substantial evidence. Further, Beasley argues the ALJ erred by failing to accord controlling weight to the opinion of her treating physician, Dr. Scott. Finally, Beasley argues the ALJ's residual functional capacity ("RFC") finding does not comport with SSR 96-8p in that it fails to include a required "function-by-function" assessment. The Court will consider each argument in turn.

#### A. Finding of Medical Improvement

Beasley first argues that the finding of medical improvement is not supported by substantial evidence. Beasley notes several errors the ALJ allegedly made in his finding of medical improvement; most significantly, Beasley alleges the ALJ failed to begin his comparative analysis from the correct point and failed to articulate with particularity how Beasley's supposed increased daily activities translate to her ability to function in the workplace.

Medical improvement is defined as any decrease in the medical severity of a claimant's

impairments that were present at the time of the most recent favorable medical decision that determined the claimant was disabled or continued to be disabled. *See id.* § 404.1594(b)(1). Such medical improvement is considered to be related to the ability to work if there has been a decrease in the severity of the impairments present at the time of the most recent favorable decisions and an increase in claimant's functional capacity to do basic work activities. *See id.* § 404.1594(b)(3). To determine if there has been a medical improvement, a comparison is made between the current medical severity of medical impairments that existed at the time of the most recent favorable medical decision and the medical severity of the impairments at the time of that favorable decision. "The most recent favorable medical decision is the latest decision involving a consideration of the medical evidence and the issue of whether [the claimant was] disabled or continued to be disabled which became final." *See id.* § 404.1594(b)(7).

In this case, an initial disability determination was made on July 17, 2000, in which the "Administration found claimant was disabled commencing April 19, 1999." (Tr. 18.) In the March 22, 2005, decision regarding Beasley's disability cessation, the ALJ concluded the Commissioner's disability determination dated July 17, 2000, was the most recent medical determination that found Beasley disabled and properly served as the comparison point for determining whether there had been medical improvement. (Tr. 20.) Beasley argues that the "correct starting point begins with diagnoses" of her medical issues, and April 1999 should serve as the comparison point for determining medical improvement. (Pl.'s Br. 23). The Court does not agree. The comparison point for medical improvement is the date of the most recent favorable decision finding claimant disabled. In this case, the July 17, 2000 determination is the most recent such decision. Consequently, the ALJ did not err from beginning his comparative analysis from July 17, 2000.

Beasley next argues that the "medical evidence of record . . . is very much a continuation of the symptoms and treatment that formed the basis for [the] original award of disability." (Pl.'s Br. 23.) Moreover, she argues the ALJ failed to articulate how her supposed improved daily activities translate to her ability to function in the workplace on a sustained basis. (Pl.'s Br. 23-24.) In concluding there had been medical improvement, the ALJ noted there had been multiple physical examinations subsequent to the July 17, 2000 disability determination that demonstrated Beasley had substantial range of motion. These examinations were inconsistent with the absolute prohibition on stooping that had been one of the key bases for the initial disability determination. (Tr. 20). The ALJ further noted the record contained several admissions from Beasley that her pain had improved, permitting her to perform a wide range of daily activities. (Tr. 20.)

A medical improvement is considered to be related to the ability to work if there is an increase in the functional capacity to do basic work activities. 20 C.F.R. § 404.1594(b)(3) (2006). While daily activities alone do not necessarily prove a claimant is capable of full-time employment, *Ekeland v. Bowen*, 899 F.2d 719, 722 (8th Cir. 1990), here the admissions from Beasley on her ability to perform daily activities taken in conjunction with the evidence of Beasley's improved ability to stoop support a finding of a medical improvement related to Beasley's ability to work. The Court concludes there is substantial evidence in the record to support the ALJ's finding of medical improvement.

### B. Controlling Weight Afforded Treating Physician

Beasley argues the ALJ erroneously failed to accord controlling weight to the opinion of her treating physician, Dr. Scott. Beasley also notes controlling weight should have been given to the opinion of Dr. Venneman, her pain management specialist.

Although opinions of treating physicians are entitled to controlling weight, such opinions are not conclusive and "must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2) (2006). Here, in concluding that "only very limited weight" would be accorded Dr. Scott's assessments, the ALJ noted the assessments were widely inconsistent with other substantial evidence and opinions of record. (Tr. 27). Specifically, the ALJ noted that Dr. Scott's February 2005 "check-box" assessment was inconsistent with his own notes and records. (Tr. 27.) Given the substantial medical evidence of record that is inconsistent with the assessments of the treating physician, the ALJ did not err in not according controlling weight to Dr. Scott's opinion.

With respect to Dr. Venneman, the ALJ did not state in his decision that he was not according controlling weight to Dr. Venneman's opinion. The ALJ simply refused to give controlling weight to Dr. Venneman's "check-box" assessment, as the assessment was replete with "cannot answer" and "subjective only" responses to the questions. (Tr. 28.) The ALJ did, however, make reference to several comments made by Dr. Venneman with respect to Beasley's medical improvement. (Tr. 20.) Thus, it cannot be said the ALJ erred by not giving controlling weight to the opinion of Dr. Venneman.              .

### C.  ALJ's RFC Finding and SSR 96-8p

Finally, Beasley argues the ALJ erroneously failed to comply with SSR-96-8p in not including a "function-by-function" assessment in his residual functional capacity finding. Specifically, Beasley alleges the ALJ's residual functional capacity assessment failed to provide any postural, manipulative, or environmental limitations. (Pl.'s Br. 30.)

According to SSR 96-8p, a residual functional capacity assessment must "identify the

individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . ." 61 Fed. Reg. 34,474, 34,475 (July 2, 1996). However, SSR 96-8p "applies to the assessment of RFC in claims for *initial entitlement* to disability benefits . . . ." *Id.* (emphasis added). Given this assessment was done for purposes of determining whether Beasley had a continued disability, the ALJ did not err in not specifically following SSR 96-8p in assessing Beasley's residual functional capacity. Moreover, even if the ALJ had considered postural limitations in formulating the RFC, such postural limitations "would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." 61 Fed. Reg. 34,478, 34,482 (July 2, 1996).[2] Therefore, the ALJ did not err in failing to consider any postural, manipulative, or environmental limitations in his RFC assessment.

### IV. Conclusion

Upon review of the record, the Court finds that substantial evidence on the record as a whole supports the ALJ's findings in this case. Accordingly, it is hereby

ORDERED that the decision of the ALJ is **AFFIRMED.**

**IT IS SO ORDERED**.

DATE:     September 25, 2006         */s/ Richard E. Dorr*
                                     RICHARD E. DORR, JUDGE
                                     UNITED STATES DISTRICT COURT

---

[2]As for the visual, manipulative, and environmental limitations Beasley claims the ALJ failed to consider, the regulations state "[s]ome medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities." 20 C.F.R. § 404.1545 (2006). There is nothing in the record to suggest that Beasley suffers from any impairments that would require the consideration of such additional limitations.